HITE, APPELLANT, *v.* INDUSTRIAL COMMISSION OF OHIO, APPELLEE.

(Decided May 24, 1937.)

*Mr. Alonzo G. Duer,* for appellant.

*Mr. Joseph O. Eppstein* and *Mr. Louis Wexler,* for appellee.

LLOYD, J.   The Industrial Commission of Ohio denied the application thereto of the plaintiff, John F. Hite, for compensation for injuries claimed to have been sustained in the course of and arising out of his employment while an employee of The Union Supply Company of Toledo. An appeal was taken from the finding of the commission to the Court of Common Pleas where, upon trial therein had, a verdict was directed in favor of the commission immediately upon the conclusion of the opening statement to the jury of counsel for Hite, who now appeals to this court on questions of law, assigning as error the directed verdict and the judgment consequent thereto.

The opening statement of counsel consisted only of

a reading to the jury of the petition of Hite and the answer thereto of the commission. So much of the petition as is pertinent to the present inquiry recites:

"That from on or about the 15th day of July, 1930, until on or about the 15th day of March, 1935, the plaintiff was continuously employed by The Union Supply Company of Toledo, Ohio, as watchman at night, and general utility man in the early morning in the doing of such work as mopping the offices, putting the ice in the cooler after the delivery of the ice in the early morning by the iceman, and dusting the desks and furniture in the offices of said company.

"That on or about the 22nd day of July, 1933, while he was performing his said duties and had just got through dusting and had the dust rag still in his hand, one J. G. Cassells and one Robert D. Flath, who were at the same time engaged in acting as employees of the said The Union Supply Company in its sales department, entered the place of business of said company.

"Thereupon the plaintiff while on his way to the basement to get his coat, stopped near the desk occupied by Cassells and complained and remonstrated with him because of his habit of coming in the store during the night time and leaving the front door unlocked and of his having done so the night before; and, upon said Cassells' failure to answer him or to make any explanation of his having left the door unlocked the night before and on numerous other occasions, and upon his failure to state that he would refrain from doing so in the future, plaintiff stated to him that he was going to report him to the president of the company for coming in at night and leaving the door unlocked, and asked him if he did not know that by so doing he was subjecting plaintiff to a dangerous risk as there were many prowlers prowling around there, and that it would be dangerous for him to keep that up when there was only one man on the job; and when

the said Cassells still failed to make any explanation or reply or promise to desist from so doing in the future, the plaintiff then lost his temper and applied a profane epithet to the said Cassells, namely, 'Any one who would do that is a "damn cur." '

"Thereupon the said Robert D. Flath, who was employed by said company as an outside salesman and who had in no manner been addressed by the plaintiff, asked said Cassells if he was going to let the plaintiff talk to him like that; and, although the plaintiff made no threat of personal injury or otherwise and made no move of any kind either toward said Cassells or said Flath, the said Flath jumped up and came through a little gate and grabbed hold of plaintiff's arms and jerked him around, and while plaintiff was trying to hold him and to protect himself from personal injury on the part of said Flath who was a strong, muscular man and much younger than the plaintiff, said Flath quickly let loose of plaintiff's arm and violently struck plaintiff on the left side of his head over the eye and above the left ear with his fist, he at the same time having some hard substance doubled up in his hand, thereby knocking the plaintiff violently down upon the floor, although plaintiff weighed over 220 pounds and was over six feet in height.

"That said blow and fall caused plaintiff's nose to bleed and his left eye to swell and to close shut, shutting off the air passages on one side of his nose, and causing terrible roaring in his left ear, disturbing the function of the branch of the nerve that takes care of the ear, disturbing the vesticular condition of the walls and other parts of said ear, causing him almost immediately to become entirely deaf in his left ear. * * *

"That the deafness in his left ear was directly and proximately aggravated, caused and occasioned by the

said blow which he received on the left side of his head over the eye and above the ear, and that said loss of hearing is permanent in its nature.

"That said injuries were sustained by plaintiff in the course of and arising out of his employment for The Union Supply Company, and were not self-inflicted."

Then follow allegations as to the filing of his application with the commission; its finding both on the hearing and the rehearing thereof that the evidence produced failed to show that "the disability was the result of an injury sustained in the course of and arising out of the employment" and the prayer "that he may be found to have a right to participate in the State Insurance Fund."

The question confronting this court is whether the foregoing alleged facts, if proven, evidence an injury sustained by Hite in the course of and arising out of his employment. The facts, as alleged, disclose that Hite's duties included something more than those merely of a night watchman; that when morning came it was also a part of his work to mop the offices, put the ice in the cooler and dust the office desks and furniture, and that "he had just got through dusting and had the dust rag still in his hand" when the employees, Cassells and Flath, entered the place of business of their employer; that the assault by Flath occurred as Hite "was on his way to the basement to get his coat." Hite's complaint "as to the unlocked door" was addressed to Cassells and what he said and did was no concern of Flath's who, like many others, was unable to attend to his own business and who, if the alleged facts are true, subjected himself criminally to arrest and punishment. Flath surely was acting entirely outside the scope of his employment. No bodily harm threatened Cassells, who was aggravatingly silent when requested to refrain from leaving the door un-

locked and was told that if he did not, a report thereof would be made to the president of the company. It can not be said that anything Hite said or did instigated the assault by Flath. Cassells was not disturbed by anything said or done by Hite and no personal encounter ensued between them. It might have been wiser if Hite had reported the dereliction to his superior without saying anything about it to Cassells, but the course taken was not unnatural, especially in view of the fact that the offense had been several times repeated.

As was said of the claimant in *Delassandro* v. *Industrial Commission*, 110 Ohio St., 506, 144 N. E., 138, it was not without the scope of Hite's employment to call to the attention of Cassels his repeated failure to lock the door, and it was to the interest and for the protection of the employer, as well as of Hite, that it should be kept locked during the night season. Certainly, if the evidence offered at the trial supports the allegations of his petition, a fact issue will be presented for determination by a jury as to whether, at the time of the alleged happening, Hite was engaged in the performance of the duties of his employment.

In the language of the Supreme Court in the *Delassandro case, supra:* "This liberal construction upon the question of what constitutes the scope of employment in order to make a liability within workmen's compensation acts has been generally recognized in the decisions. * * * It is sufficient to say that the decisions indicate a liberal construction of the acts, the test generally adopted being whether or not the injury was sustained and occasioned by reason of the employment, or in furtherance of the employer's interests, or in the performance of acts reasonably connected therewith.

"Being of opinion that the allegations of the * * * petition filed herein disclose sufficient facts to show

that the injury in question was received 'in the course of employment,' our conclusion is that it was error to deny plaintiff the privilege of introducing evidence.''

The judgment of the Court of Common Pleas is therefore reversed.

*Judgment reversed.*

CARPENTER and OVERMYER, JJ., concur.